UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CAROL CONYERS,

        Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No.  2:25-cv-00552-DJC-SCR

FINDINGS AND RECOMMENDATIONS

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34 (the "Act").  For the reasons that follow, the undersigned recommends that Plaintiff's motion for summary judgment be granted, that the Commissioner's cross-motion for summary judgment be denied, and this matter be REMANDED for further consideration consistent with this these Findings and Recommendations.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB in August 2021.  Administrative Record ("AR") 58.[1]  Plaintiff alleged the disability onset date was March 15, 2021.  AR 60.  The applications were disapproved initially and on reconsideration.  On February 21, 2024, administrative law judge ("ALJ") Trina

---

[1] The AR is electronically filed at ECF No. 9-9.

1

Mengesha-Brown presided over a hearing on plaintiff's challenge to the disapprovals.  AR 35-56 (Transcript).  Plaintiff was present and represented by counsel.  Susanna Roche, a vocational expert, also testified.  AR 49-56.

On April 2, 2024, the ALJ issued an unfavorable decision, finding plaintiff had not been "under a disability" from March 15, 2021, through the date of decision.  AR 16-28 (decision).  On January 10, 2025, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3 (decision).

Plaintiff filed this action in the Eastern District of California on February 19, 2025.  ECF No. 1.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 10 (Plaintiff's summary judgment motion), 12 (Commissioner's summary judgment motion), 13 (Plaintiff's reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1962, and was 61 years old at the time of her administrative hearing. AR 39.  Plaintiff has a high school education.  AR 39.  She testified that she became unable to work in March 2021 after she had broken her ankle[2].  AR 42.  It was during the Covid pandemic, she was unable to get adequate physical therapy, and developed back pain. AR 42-43.  Plaintiff had prior work experience as an administrative assistant in the mortgage industry and as a general office administrative assistant.  AR 40-41.  The VE categorized her past relevant work as a mortgage clerk and administrative assistant.  AR 50.  Plaintiff offered no testimony at the hearing about any mental health impairments

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

---

[2]  Plaintiff's testimony states March 2021, but the medical record and Plaintiff's brief reflect that she broke her ankle in March 2020 in a bicycle accident.  AR 530-34.

2

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

## IV.  RELEVANT LAW

Disability insurance benefits are available for eligible individuals who are "under a disability."  42 U.S.C. § 423(a)(1)(E).  An individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

4

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

1. [Step 1] The claimant has not engaged in substantial gainful activity since March 15, 2021, the alleged onset date (AR 19).

2. [Step 2] The claimant has the following severe impairments: complex regional pain syndrome (CRPS) of the left ankle status-post open reduction internal fixation (ORIF) and subsequent hardware removal; and degenerative disc disease of the lumbar spine.  (AR 19).

3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 22).

4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; the avoidance of unprotected heights and workplace hazards; occasional pushing and pulling with the upper and lower extremities; no work with vibrations; no walking over uneven surfaces; and no operating foot controls on left.  (AR 22).

5. [Step 4] The claimant is able to perform past relevant work as an administrative assistant and mortgage clerk as such work is not precluded by the RFC. (AR 27).

6. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2021 through the date of the ALJ's decision. (AR 28).

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) not providing clear and convincing reasons for discounting Plaintiff's testimony regarding allegations of pain and physical dysfunction; (2) improperly evaluating the medical opinions of treating medical sources, Shivani Ruben, M.D.,

and Alexander Grand, M.D.; (3) improperly rejecting the opinions of consultative examiners Meena Song, M.D., and Troy Singh, M.D., and (4) omitting mental work restrictions from the RFC.  ECF No. 10 at 14.

### A.   The ALJ's Decision to Discount Plaintiff's Testimony

The ALJ discounted Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her physical impairments.  Evaluating the credibility of a plaintiff's subjective testimony is a two-step process: "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  *Id.*  (internal citations omitted).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  *Id.*  (internal citations omitted).  While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Id.* at 959.  "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work . . . . The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to

convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The clear and convincing standard is "not an easy requirement to meet" and the "most demanding requirement in Social Security cases." *Garrison*, 759 F.3d at 1015 (9th Cir. 2014) (citation omitted).

Plaintiff testified that her past relevant work involved "sitting most of the day" and was "8:00 to 5:00 of sitting down mostly." AR 40-41. Plaintiff testified that she quit working after she broke her ankle in March 2021. AR 42.[3] Plaintiff described that she broke her ankle during COVID, was unable to get proper physical therapy, wore a boot for six weeks, and began having back pain. AR 42. She said she had shooting pains, would need to get up and walk around and take extra breaks, which her employer didn't like. AR 42. She testified the pain affects her sleep, and although she often feels better in the mornings, in the afternoon she often has to lay down due to back pain. AR 43. Plaintiff testified that she has pain when sitting, and would need to get up and move around for 15 to 20 minutes after 20 minutes of sitting. AR 44-45.

Plaintiff testified that due to her vision she only drives during the day, "by landmarks," and that her husband usually drives and she only drives short distances. AR 46. Plaintiff testified she is unable to do chores around the house, but could do a "little bit of cooking." AR 48. Although she testified she could do no chores, her testimony indicated she attempted such chores, as she stated "it hurts" and "takes me at least three hours." AR 48. She further testified that due to her vision problems she would make mistakes when working on the computer and would get headaches. AR 47.

The ALJ found upon a review of the record "that it does not support the full extent of the claimant's allegations of disabling symptoms." AR 23. The ALJ found that Plaintiff's statements about her physical condition were "not supported by the findings on physical examination or imaging/testing, or the nature of claimant's treatment." AR 23. The ALJ discussed a November 2021 physical examination at which Plaintiff showed full strength, normal gait, and full range of motion. AR 23, citing to Exhibit 4F. The ALJ also discussed a February 2023 consultative exam

---

[3] There are some [INAUDIBLE] references in transcript, such as: "Well, I'd broken [INAUDIBLE] in March of 2021." AR 42. That Plaintiff broke her ankle is clear from the overall record.

at which Plaintiff had normal gait, negative straight leg raising, and full strength.  AR 23-24, citing 12F.  The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce" the alleged symptoms.  AR 26.  However, as to the intensity, persistence, and limiting effects, the ALJ found the testimony was not entirely consistent with the medical evidence.  AR 26.

The ALJ further found that Plaintiff's allegations were "not supported by the radiographic and other objective evidence."  AR 24.  The ALJ cited to objective evidence showing mild degenerative disc disease (AR 445, 552 and 1159) and no nerve root compression or spinal stenosis (AR 445).  The ALJ also considered Plaintiff's activities of daily living (ADLs) and stated: "Furthermore, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  AR 27. The ALJ stated that Plaintiff reported being able to shop, drive, prepare full meals, clean, do laundry, and take care of personal care independently.  AR 27.

It thus appears the ALJ discounted Plaintiff's testimony for three reasons: 1) inconsistency with objective medical record; 2) the "nature of claimant's treatment"; and 3) inconsistency with her activities of daily living.

First, the ALJ discounted Plaintiff's subjective testimony because it was inconsistent with the objective medical evidence.  AR 23, 26-27 (stating "physical examination and imaging do not support the degree of alleged limitation").  An ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). However, an ALJ may not reject allegations of pain based solely on objective evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

In concluding that Plaintiff's allegations are not entirely consistent with the objective evidence, the ALJ appears to rely heavily on imaging evidence. The ALJ states: "Imaging of the lumbar spine shows mild multilevel degenerative disc disease and facet arthropathy. There is no nerve root compression or high-grade spinal stenosis. MRI of the left ankle from February 2021 shows a nearly healed fracture and a chronic anterior syndesmotic ligament tear." AR 24 (record citations omitted). The ALJ repeats this statement—concerning mild degenerative disc disease and no nerve root compression or high-grade spinal stenosis—three more times in the decision. AR 25-27. The ALJ also relies on some physical exams showing normal gait and normal strength. Plaintiff argues that the ALJ selectively emphasized sparse normal exam findings, while ignoring other evidence of record. As Plaintiff points out, there are numerous references in the record to antalgic gait (for example AR 468, 849, 1163) and some references to limited range of motion (for example AR 993, 1182). Plaintiff also focuses on the assessment by NP Victoria Shu Wah Flower of high-grade canal stenosis. ECF No. 10 at 16, citing AR 708. The January 26, 2022, office note from NP Flower states: "Independent review of the lumbar MRI shows high-grade canal stenosis or significant foraminal stenosis. Facet joint hypertrophy is appreciated." AR 708. The ALJ does not discuss NP Flower's assessment, and the Commissioner did not respond to the argument raised by Plaintiff that NP Flower had conducted an independent review of the MRI and assessed high-grade canal stenosis or significant foraminal stenosis. ECF No. 10 at 12, 16, & 21. The ALJ is not required to accept NP Flower's assessment, but it does not appear to have been considered.

Instead, the ALJ relied heavily on an MRI of the back taken in December 2020 (AR 445), and an MRI of the left ankle taken in January 2021. AR 330-31. The ALJ noted that the ankle MRI showed a "nearly healed" fracture. AR 24. The MRI also showed "[c]hronic anterior syndesmotic ligament tear" and probable "chronic deltoid ligament sprain." AR 331. That Plaintiff's broken ankle had "nearly healed" almost a year after she broke it, and she still had a chronic ligament tear does not undercut Plaintiff's allegations of continuing pain. After that time period, Plaintiff attempted several different forms of treatment to alleviate her pain, including: 1) nerve block (AR 863); 2) trigger point injections (AR 1005); 3) lumbar facet joint injection (AR

9

1056); 4) implantation of dorsal root ganglion stimulator (AR 342); and 5) physical therapy.

An ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1204 (9th Cir. 2024), citing *Smartt*, 53 F.4th at 498. An ALJ "may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged." *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). The Court finds the ALJ has not adequately provided specific, clear, and convincing reasons to explain why the medical evidence is inconsistent with Plaintiff's subjective symptom testimony. *See Ferguson*, 95 F.4th at 1200.

Second, the ALJ mentioned that Plaintiff's subjective symptoms were not consistent with the "nature of" her treatment, and in a concluding somewhat boilerplate paragraph stated a variety of factors were considered, including "the dosage and effectiveness of medication." AR 32. The ALJ may of course consider the type and effectiveness of treatment. *Burch*, 400 F.3d at 680 (9th Cir. 2005). The effectiveness of medication is relevant to the evaluation of a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv). An ALJ may reject a claimant's allegations based on "evidence suggesting that [the claimant] responded well to treatment." *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for Social Security benefits. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, it is unclear what role, if any, the effectiveness of treatment played in the ALJ's consideration. The Commissioner does not discuss this point in its brief. The ALJ does not categorize Plaintiff's treatment for her physical impairments as "conservative" or discuss that her pain was adequately controlled with medication. In fact, although Plaintiff obtained some pain relief from treatment, several of her attempts at treatment appeared unsuccessful. *See for example* AR 1159 (zero pain relief from nerve stimulator implant and listing several medications Plaintiff had "tried and failed"); AR 349 (50% pain relief from trial implantation of dorsal root ganglion stimulator); AR 369 (injection in back did not provide any relief); AR 373 (lack of relief with physical therapy); AR 378 (reporting "stabbing/cutting" pain and 30% relief from current

treatments); AR 388 (describing pain as disabling and "no relief" from nerve block); AR 872 (30% relief from sacroiliac joint injection); AR 880 (0% relief from lumbar intra-articular facet joint injection); AR 991 ("claimant takes Tylenol for the pain which does not seem to offer much relief); AR 1056 (trigger point injections did not provide "any significant relief to her pain"). The ALJ did not adequately explain her consideration of treatment or provide a path for Court to follow. Thus, this factor does not support discounting Plaintiff's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (ALJ must provide "some reasoning" such that the agency's path can reasonably be discerned).

Third, the ALJ found that Plaintiff "has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 27. The ALJ states: "For example, although the claimant reports pain with these activities, she shops in stores, drives (during the day), prepares full meals, cleans, does the laundry, and performs personal care independently." AR 27. An ALJ may discount a claimant's subjective symptom testimony when the limitations described are inconsistent with a claimant's activities of daily living. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (finding that claimant's daily activities which included playing video games, watching TV, using library computer, using public transport, shopping, preparing meals, and socializing constituted substantial evidence to support the ALJ's decision). The Ninth Circuit has also stated that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. A disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Ferguson*, 95 F.4th at 1203 (citation omitted). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.*, citing *Garrison*, 759 F.3d at 1016.

Plaintiff testified that due to her vision she only drives during the day, "by landmarks," and that her husband usually drives and she only drives short distances. AR 46. Plaintiff testified she is unable to do chores around the house, but could do a "little bit of cooking." AR 48.

11

Although she testified she could do no chores, her testimony indicated she attempted such chores, as she stated "it hurts" and "takes me at least three hours."  AR 48.  This testimony about ADLs does not establish that Plaintiff could function in the workplace.  Nor did the ALJ explain how being able to engage in these fairly minimal ADLs undercut Plaintiff's allegations as to her limitations.  *See Brown-Hunter*, 806 F.3d at 493 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

The ALJ did not identify what specific testimony was not credible.  The Commissioner in its brief to this Court, attempts to identify the testimony of Plaintiff's "extreme complaints" as being that she could only lift about 3 pounds, and walk 200 feet.  ECF No. 12 at 5-6.  The Commissioner identifies these complaints from Plaintiff's function report.[4]  *Id*., citing AR 265.  The ALJ mentioned these limitations in her summary of Plaintiff's testimony (AR 23), but it is not clear that the ALJ found these limitations incredible or inconsistent with the ADLs.  The Commissioner states: "In contrast to Conyer's allegations about being incapable of lifting basically anything or walking more than a couple hundred feet, she handled all her personal care including dressing and bathing, cooked meals … cleaned the house, did laundry, and shopped for groceries."  ECF No. 12 at 6.  Dressing and bathing and cooking generally do not require lifting more than 3 pounds or walking more than 200 feet.  Cleaning the house and doing laundry, would also likely not require walking of long duration, and may not involve lifting more than 3 pounds depending on what cleaning was undertaken.  Importantly, the ALJ did not explain why these ADLs were inconsistent with claimed limitations.  *See Ferguson*, 95 F.4th at 1203 ("[T]he ALJ did not explain how, in his view, Ferguson's testimony about those daily activities is inconsistent with his testimony about the severity and frequency of his headaches. And we see no reasonable inference that such an inconsistency exists.").

Plaintiff testified that she could "start" cooking, but her husband would usually finish it.  AR 48.  She stated that she could not do mopping, sweeping, or dusting.  AR 48.  She testified

---

[4]  The copy of the function report submitted in the record is of poor quality and at times barely legible.  AR 260-67.

that "my husband will bring the laundry to me and load it – put it in the dryer." AR 49. So once again, Plaintiff would not be lifting any significant amount of weight in doing the laundry because her husband carries the clothes and she folds it while sitting on bed. AR 49. Grocery shopping would typically involve lifting more than three pounds and walking more than 200 feet, however no testimony was elicited concerning what "shopping" entails. The function report also stated that her husband would drive her to the store, thus he would be available to lift heavy items. Thus, even the Commissioner's examples of "extreme" limitations are not inherently contradicted by Plaintiff's limited ADLs. The Commissioner characterizes Plaintiff's complaints as "extreme," "drastic," and "out of step with the medical evidence" (ECF No. 12 at 5). However, in March 2021, Plaintiff attended physical therapy and the assessment reads: "Patient has an MD appt today for follow up on Lowback pain – had a flareup yesterday after picking up a vinegar bottle off floor – she related unable to walk yesterday – today she is very guarded with transitional movement and bed mobility." AR 409. There is accordingly evidence of significant ADL limitations.

The ALJ did not adequately explain which of Plaintiff's allegations she found inconsistent with Plaintiff's ADLs, or how the ADLs undercut Plaintiff's allegations. Thus, consideration of the ADLs was not a specific, clear, and convincing reason to discount Plaintiff's testimony. In sum, the ALJ did not articulate specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony concerning her pain and limitations, and accordingly the matter should be remanded.

B. The ALJ's Assessment of Medical Opinions

Plaintiff's second and third points of error challenge the medical opinions of four providers. In her second point, Plaintiff asserts that the ALJ did not properly evaluate the medical opinions of treating medical sources, Shivani Ruben, M.D., and Alexander Grand, M.D. ECF No. 10 at 18. Then in her third point, Plaintiff claims the ALJ erred in rejecting the opinions of consultative examiners Meena Song, M.D., and Troy Singh, M.D. ECF No. 10 at 23. Consideration of medication opinions is governed by the regulations that became effective in 2017, which changed the framework for such consideration. Revisions to Rules Regarding the

Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The regulations provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness.  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods*, 32 F.4th at 791-92.  Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence.  *Id.*  In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings."  *Id.*  (citing 20 C.F.R. §§

14

404.1520c(b), 404.1520(b)(2)).  The Court will now discuss the ALJ's consideration of the four medical opinions.

### 1.  Shivani Ruben, M.D

Dr. Ruben completed a Physical Residual Functional Capacity Questionnaire for Plaintiff in December 2023.  AR 1107 to 1110.  Dr. Ruben indicated that Plaintiff could only sit for 5-10 minutes before needing to get up, and could only stand for 5-10 minutes before needing to sit down.  AR 1108.  She checked the box indicating that Plaintiff could only sit for less than two hours total in an 8 hour workday.  AR 1109.  She wrote that Plaintiff would need to take a 30 minute break every 15 to 30 minutes to lie down or walk.  AR 1109.  She indicated that Plaintiff must use a cane or other assistive device.  AR 1109.  She further opined that Plaintiff was likely to miss more than four days of work per month.  AR 1110.

The ALJ considered Dr. Rueben's opinion and found it unpersuasive.  AR 25.  The ALJ found Dr. Rueben's opinion was not supported by her own mental and physical examination findings.  *Id*.  The ALJ also found Dr. Rueben's opinion to be inconsistent "with the degree of abnormality present on imaging."  *Id.*  The ALJ cited to several portions of the medical record to support this assessment.  Dr. Rueben's assessment finds Plaintiff more limited than Plaintiff's own testimony.  Plaintiff testified she could sit for 20 minutes and walk for 30 minutes.  AR 44. In contrast, Dr. Rueben found Plaintiff could only sit or stand for 5 to 10 minutes at a time.  AR 1108.  Dr. Rueben also opined that Plaintiff required an assistive device, which was not supported by the medical record.  The ALJ considered the supportability and consistency of Dr. Rueben's opinion, and Plaintiff has not demonstrated error in the ALJ's evaluation.

### 2.  Alexander Grand, M.D.

Dr. Grand completed a "Vision Impairment Assessment Form" in December 2023.  AR 1189-1191.  Dr. Grand assessed Plaintiff as having 20/80 vision in both eyes.  Dr. Grand found some "mild" contraction of peripheral vision.  AR 1189.  Dr. Grand opined that Plaintiff could work "with small objects such as those involved in doing sedentary work".  AR 1190.  He found that Plaintiff would need to take unscheduled breaks during the workday due to headache, eye

strain, and lower back pain. AR 1191. He stated that Plaintiff would "occasionally"[5] experience symptoms severe enough to interfere with attention and concentration. *Id*.

The ALJ considered Dr. Grand's opinion and did not find it to be persuasive. AR 25. The ALJ noted that it was "internally inconsistent" and not consistent with other evidence of record showing that Plaintiff had mild glaucoma and repaired cataracts. AR 25, citing AR 655 and AR 782. Plaintiff's brief acknowledges that Dr. Grand's opinion was inconsistent and attempts to explain it away. ECF No. 10 at 22 ("this inconsistency may have simply been a clerical error"). Thus, the ALJ's supportability finding, that the report was not supported because it was internally inconsistent, is supported by the record. However, the fact that Plaintiff had cataract surgery in December 2021, is not necessarily inconsistent with Dr. Grand's evaluation in December 2023. Nor is the fact that she had an assessment for glaucoma in November 2021, in which Plaintiff reported "worsening vision," and which led to the cataract surgery, inconsistent with Dr. Grand's assessment of her vision two years later. AR 655.

Plaintiff argues that remand is necessary to discuss and evaluate the persuasiveness of the medical opinions. ECF No. 10 at 22. As the Court is recommending remand to further consider Plaintiff's subjective symptom testimony, the ALJ will also be able to consider these issues.

3.   Meena Song, M.D.

Dr. Song conducted a consultative examination in November 2021. AR 627-631. Dr. Song's observations include that Plaintiff did not require an ambulatory device and "demonstrated no notable difficulties walking down the hall" and "[n]o notable difficulties sitting in chair while history was collected." AR 628. Plaintiff's muscle tone and bulk was normal with 5/5 motor strength in both the upper and lower extremities. AR 629. Dr. Song found Plaintiff had tenderness to palpation on her left leg and lower back. AR 631. She found Plaintiff "should be able to stand and walk for less than two hours in an eight-hour day" and "remain seated for approximately six hours". AR 632. Dr. Song assessed no visual limitations. AR 632.

The ALJ found this opinion not fully persuasive. AR 25. In discussing supportability, the

---

[5] "Occasionally" was defined on the form as "6% to 33% of an 8-hour working day".

ALJ noted that while the physical examination revealed tenderness, it also showed full strength, normal gait, and full range of motion. AR 25. Thus, the ALJ found the standing/walking limitation was not supported. The ALJ also found the standing/walking limitation was not supported by other medical records which showed that Plaintiff did not need an assistive device or have trouble with balance. AR 25. Plaintiff argues that the fact she is not using an assistive device is not inconsistent, because her "primary symptoms were extreme and debilitating pain, not balance issues." ECF No. 10 at 24. The ALJ may have reasonably assumed that someone experiencing extreme pain while walking would benefit from an assistive device. On the other hand, Dr. Song's conclusion that Plaintiff could not stand and walk for more than two hours in an eight-hour work day due to left ankle complex regional pain syndrome, is not necessarily inconsistent with the fact that Plaintiff does not use an assistive device to walk. The ALJ will have the opportunity to reevaluate this opinion on remand.

### 4. Dr. Singh

Plaintiff saw Dr. Singh for a consultative exam in February 2023. AR 991-995. Plaintiff reported suffering from back and left ankle pain, that worsens with lifting and movement. AR 991. Plaintiff also reported experiencing vision loss in her left eye. AR 991. Plaintiff stated her symptoms negatively impact her activities of daily living. AR 991. On exam, Plaintiff's back was non-tender, but she had some decreased range of motion. AR 993. She had no tenderness on palpation in her lower extremities. AR 993. Her gait was normal, and no assistive device was utilized. AR 993. Plaintiff demonstrated some difficulty squatting and rising. AR 993.

Dr. Singh opined that upon physical examination "orthopedic deficits are noted which diminish functional capacity and ability to perform job duties and ADLs." AR 994. Dr. Singh found Plaintiff could stand and walk for two to four hours in an eight-hour day, and remain seated for four to six hours. AR 994-95. Dr. Singh noted that "visual acuity is not limited." AR 995.

The ALJ found Dr. Singh's opinion to be partially persuasive. AR 25. As to supportability, the ALJ found the opinion partially supported by the examination findings that showed decreased range of motion and difficulty squatting/rising. AR 25. On the issue of consistency, the ALJ found that Dr. Singh's postural limitations and limitations on sitting were

17

not consistent with the imaging of Plaintiff's spine.  AR 25.

Plaintiff requests remand for reevaluation of Dr. Song's opinion, and as the matter is being remanded, the ALJ will have the opportunity to reevaluate this opinion on remand.

C.    Mental Work Restrictions and the Residual Functional Capacity

Plaintiff's fourth and final point of error, is that the ALJ erroneously omitted mental work restrictions from Plaintiff's residual functional capacity.  The ALJ found at Step Two that Plaintiff does not have any severe mental impairments, and Plaintiff does not challenge that conclusion.  Instead, Plaintiff argues that even non-severe impairments must be considered, and that she had "mild limitations" due to her anxiety and depression that were not accounted for in the RFC.  ECF No. 10 at 25.

An RFC is, in short, "the most [a claimant] can still do despite [his or her] limitations." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing 20 C.F.R. § 416.945(a)(1)).  In assessing RFC, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your [RFC].").  "While [disability] regulations require the ALJ to consider the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC."  *Rania v. Kijakazi*, No. 2:20-cv-1541 MCE CKD SS, 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021) (emphasis in original).  An ALJ is not necessarily required to include mild mental limitations in the RFC.  See *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (affirming ALJ's decision where the ALJ included no mental limitations in the RFC despite finding "mild" limitations in two of the four Paragraph B criteria).

Here, the ALJ found no limitation in the four Paragraph B criteria.  AR 20-21.  Thus, Plaintiff's argument may be that the ALJ failed to consider the opinion of state agency consultant, Nicole Robicheau, Psy.D., who assessed mild limitations in the four areas.  AR 89-90.  The Commissioner argues the ALJ's consideration is supported by substantial evidence in the record

and the Ninth Circuit's decision in *Woods*. As the matter is being remanded, if the parties desire, they can revisit this issue on remand and the ALJ may reconsider it.

## VII.  CONCLUSION

Accordingly**, IT IS HEREBY RECOMENDED** that:

1.  Plaintiff's motion for summary judgment (ECF No. 10) be GRANTED;

2.  Defendant's cross-motion for summary judgment (ECF No. 12) be DENIED;

3.  This matter be REMANDED to the Commissioner for further consideration consistent with this Order; and

4.  The Clerk of the Court enter judgment for Plaintiff and close this case upon the adoption of these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  *Id.*; *see also* Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 18, 2026.

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

19